# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In re the Marriage of: | No. 53340-5-II |
| DONNA LYNNE TUPPER (NKA: DONNA LYNNE HAGAR), | |
| Respondent, | |
| v. | PUBLISHED OPINION |
| MICHAEL LEE TUPPER, | |
| Appellant. | |

MELNICK, J. — On September 21, 2006, Donna Tupper (now known as Hagar[1]) and

Michael Tupper agreed to a decree of dissolution of their marriage. As relevant here, the decree

awarded 50 percent of Tupper's Social Security benefits, once received, to Hagar. In 2018, after

Hagar moved to enforce that provision of the decree, the court granted the motion. Tupper appeals,

arguing that the division of his Social Security benefits is prohibited by both state and federal law,

and it is void due to federal preemption of the division of Social Security benefits. Because, based

on the Supremacy Clause, federal preemption principles, and the Social Security Act, the court

had no authority to enter such an order, the order is void. However, we disagree with Tupper's

proposed remedy and instead remand the case to the trial court to reconsider the entire property

division.

---

[1] We refer to Donna Hagar by her current name.

FACTS

On September 21, 2006, Tupper and Hagar dissolved their marriage. The court entered a decree of dissolution, and its findings of fact and conclusions of law incorporated a dissolution agreement reached by the parties after mediation. Hagar's lawyer drafted the decree. Tupper was a self-represented litigant.

As part of the decree, the court ordered Tupper to pay Hagar 50 percent of his Social Security benefits, including disability benefits. The payments were to commence upon Tupper either retiring or collecting the benefits because of a disability. The court did not designate the nature of the award as community property, separate property, maintenance, or anything else. The court never mentioned Social Security benefits in its findings of fact or conclusions of law.

In 2016, Tupper retired and began collecting Social Security benefits. In October 2018, Hagar filed a motion to show cause for enforcement of the decree. She had received none of Tupper's Social Security payments. In relevant part, Hagar wanted Tupper to pay her 50 percent of his Social Security benefits.

In February 2019, a superior court commissioner ordered Tupper to fully comply with the decree. Tupper moved for revision of the commissioner's order, arguing that the court lacked the authority to award Social Security benefits, and that the award was void due to a prohibition on dividing such benefits. A superior court judge denied revision. Tupper appeals.

ANALYSIS

I. DIVISION OF SOCIAL SECURITY BENEFITS

A. Legal Principles

The question of whether the trial court had the authority to divide Tupper's Social Security benefit is a question of law, which we review de novo. *Roats v. Blakely Island Maint. Comm'n,*

*Inc*., 169 Wn. App. 263, 273, 279 P.3d 943 (2012).  Once a judge rules on a motion for revision, any appeal is from the judge's decision, not the commissioner's.  *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004).

The Social Security Act[2] prohibits a beneficiary from transferring or assigning his or her benefits to another.  42 USC § 407(a).[3]  It also forbids the use of legal processes to reach such benefits.  42 USC § 407(a).  The prohibitions exclude payments or transfers "in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses."  42 USC § 659(i)(3)(B)(ii).

A court making a distribution of property in a dissolution proceeding may consider that a party will receive Social Security benefits; however, the benefits themselves are not divisible.  *In re Marriage of Zahm*, 138 Wn.2d 213, 219, 978 P.2d 498 (1999); *In re Marriage of Rockwell*, 141 Wn. App. 235, 244, 170 P.3d 572 (2007).  State courts are preempted by federal law from distributing or transferring Social Security benefits in a dissolution proceeding.  42 USC § 659(i)(3)(B)(ii); *see also Goodwin v. Bacon*, 127 Wn.2d 50, 896 P.2d 673 (1995).

Whether a judgment is void is a question of law we review de novo.  *Castellon v. Rodriguez*, 4 Wn. App. 2d 8, 14, 418 P.3d 804 (2018).  There is a difference between a void judgment and a voidable judgment.  *Dike v. Dike*, 75 Wn.2d 1, 8, 448 P.2d 490 (1968).  A judgment is void if the court lacks jurisdiction over the parties or the subject matter, or if it does not possess

---

[2] Ch. 7 U.S.C. 42.

[3] "The right of any person to any future payment under this subchapter shall not be transferrable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."  42 U.S.C. § 407(a).

the inherent power to enter the particular order involved. *Bresolin v. Morris*, 86 Wn.2d 241, 245, 543 P.2d 325 (1975); *see Ronald Wastewater Dist. v. Olympic View Water & Sewer Dist.*, ___ Wn.2d ___, 474 P.3d 547, 552-53 (2020).

B.    Legal Background

In *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 590, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979), a case involving the federal Railroad Retirement Act, the Court held that the federal constitution's supremacy clause preempted California's community property laws. In its analysis, the Court noted the similarities between Railroad Retirement Act benefits and federal Social Security benefits, both of which are noncontractual and both of which have been granted protection from transfer by Congress. *Hisquierdo*, 439 U.S. at 575-76. The Court ultimately held that Railroad Retirement Act benefits were not susceptible to distribution as property in a dissolution proceeding. *Hisquierdo*, 439 U.S. at 590.

Twenty years later, *Zahm* applied *Hisquierdo* and concluded that "[S]ocial [S]ecurity benefits themselves are not subject to division in a marital property distribution case" and "federal statutes secure [S]ocial [S]ecurity benefits as the separate indivisible property of the spouse who earned them." *Zahm*, 138 Wn.2d at 219, 220.

In affirming the trial court, the court reasoned that no error existed because the trial court merely classified the Social Security benefits as community property, but did not actually distribute them. *Zahm*, 138 Wn.2d at 220-21. *Zahm* concluded that, when determining the parties' economic positions at the time of dissolution, "'[a] trial court could not properly evaluate the economic circumstances of the spouses unless it could also consider the amount of [S]ocial [S]ecurity benefits currently received.'" 138 Wn.2d at 223 (quoting *In re Marriage of Zahm*, 91 Wn. App. 78, 85, 955 P.2d 412 (1998), *aff'd by Zahm*, 138 Wn.2d 213).

4

In *Rockwell*, 141 Wn. App. at 245, we followed *Zahm* and affirmed the indivisibility of Social Security benefits. In *Rockwell*, one party was not entitled to draw Social Security benefits because of the structuring of a federal pension. The federal pension was considered community property; the other party's Social Security benefits were not. The trial court compensated for the inequity by treating a portion of the federal pension as if it were Social Security benefits. *Rockwell*, 141 Wn. App. at 245. However, the court did not add any Social Security benefits to either parties' "column" when it divided the property. *Rockwell*, 141 Wn. App. at 245. This treatment allowed the trial court to avoid valuing Social Security benefits and offsetting those benefits against other property, or dividing one party's Social Security benefits, both of which would have been error. *Rockwell*, 141 Wn. App. at 245.

A similar, but not identical issue, arose in *Howell v. Howell*, __ U.S. __, 137 S. Ct. 1400, 197 L. Ed. 2d 781 (2017). *Howell* concerned the division of military disability benefits as property in a divorce. 137 S. Ct. at 1405-06. The parties in *Howell* divorced while the husband was still actively serving in the military. In accordance with the Uniformed Services Former Spouse Protection Act (USFSPA), which allows states to divide "disposable retired pay" in divorce proceedings, the parties split his military retirement pay in half. 10 U.S.C. § 1408(c); *Howell*, 137 S. Ct. at 1404. Some years later, the wife's military retirement pay benefits were reduced due to the husband's decision to waive military retirement pay to received disability benefits. *Howell*, 137 S. Ct. at 1404.

Relying on the USFSPA and other precedent, the Arizona Supreme Court affirmed a trial court's decision ordering the husband to indemnify the wife for her vested rights in the military retirement pay. *In re Marriage of Howell*, 238 Ariz. 407, 361 P.3d 936, 938 (2015), *reversed by Howell*, 137 S. Ct. 1400. It reasoned that while a trial court could not divide military retirement

5

pay that a military member has already waived to obtain disability benefits, it should be able to require reimbursement for a post-decree reduction. *Howell*, 361 P.3d at 409. The United States Supreme Court reversed, holding that "federal law completely pre-empts the States from treating waived military retirement pay as divisible community property." *Howell,* 137 S. Ct. at 1405. Accordingly, under *Howell*, state courts may now divide military retirement pay only to the extent that it qualifies as disposable retired pay, as defined in 10 U.S.C. § 1408(a)(4)(A), and may not enter orders that "displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress." 137 S. Ct. at 1406.

      1.     The Court Erred in Dividing Tupper's Social Security Benefits

Tupper argues that the trial court's order violated 42 U.S.C. § 407(a). Hagar makes several arguments in response. First, Hagar argues that the division was not improper because it did not explicitly value the Social Security benefits or make "a direct transfer, assignment or division of [Tupper's] Social Security benefit." Br. of Resp't at 23. Hagar then argues that the division was intended to provide post-retirement spousal maintenance. We agree with Tupper.

As set forth above, the Social Security Act allows transfers of Social Security benefits for the payment of alimony or child support, but prohibits the transfer of benefits "in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii). *Zahm* and *Rockwell* confirm that, while a Washington court may consider that one or both parties will receive Social Security benefits when making a distribution of property, the benefits themselves are not divisible. *Zahm*, 138 Wn.2d at 219, 221; *Rockwell*, 141 Wn. App. at 245.

Hagar offers no support for her apparent belief that a division of benefits requires a direct transfer—such as a regular deduction from the benefit itself. Hagar also offers no support for her

contention that the "inartfully" drafted provision was intended to provide post-retirement spousal support to Hagar. Br. of Resp't at 25. We are not required to consider arguments without sufficient citation to authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). In coming to this conclusion, we are mindful that the trial court never characterized the property in dispute. It never explained its purpose in awarding the Social Security benefits to Hagar. It appears to be in violation of federal law.

The trial court issued an order enforcing a provision that explicitly divided Tupper's Social Security and awarded half of its monthly value to each party. We conclude that the provision in question divided Social Security benefits in violation of 42 U.S.C. § 407(a).

> 2.   Federal Law Preempts the Division of Social Security Benefits

Tupper also argues that the federal prohibition against dividing Social Security benefits preempts any state division of Social Security benefits. We agree.

The doctrine of preemption is derived from the supremacy clause of the United States Constitution, which states: "[T]he Laws of the United States . . . shall be the supreme law of the land . . . any thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. CONST. art. 6, cl. 2; *Goodwin*, 127 Wn.2d at 57.

There is a general presumption against preemption, "'unless that [is] the clear and manifest purpose of Congress.'" *Goodwin*, 127 Wn.2d at 57 (internal quotation marks omitted) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)). The burden of proof is on "'the party claiming preemption.'" *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 265, 884 P.2d 592 (1994) (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 327, 858 P.2d 1054 (1993)).

Here, federal law clearly prohibits the transfer of benefits "in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii). To the extent that the superior court's order purported to enforce a division of Tupper's Social Security benefits, we conclude that it is preempted by federal law from doing so.

　　　　3.　　　Void Judgment

In this case, it is clear that the superior court had jurisdiction over the parties and over the subject matter, i.e. dissolution of marriage.[4] However, the superior court did not have the power, inherent or otherwise, to enter the order transferring and distributing Social Security benefits.[5] Therefore, the judgment is void.

"'The term "subject matter jurisdiction" is often confused with a court's "authority" to rule in a particular manner,'" leading to "'improvident and inconsistent use of the term.'" *Marley v. Dept. of Labor & Indust.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994) (superseded by statute on other grounds) (footnote omitted) (quoting *In re Marriage of Major*, 71 Wn. App. 531, 534-35, 859 P.2d 1262 (1993)). A "court or agency does not lack subject matter jurisdiction solely because it may lack authority to enter a given order." *Marley*, 125 Wn.2d at 539. A court has subject

---

[4] As will be seen, other courts have decided that courts entering dissolution decrees do not have jurisdiction over the subject matter, i.e. Social Security benefits. But they also talk about the power of the court to transfer and distribute Social Security benefits.

[5] Subject matter jurisdiction is often confused with a court's authority. *Marley v. Dept. of Labor & Indust.*, 125 Wn.2d 533, 538-41, 886 P.2d 189 (1994) (superseded by statute on other grounds). Where a court has authority to adjudicate the type of controversy encompassed by the action, it has subject matter jurisdiction. *Shoop v. Kittitas County*, 108 Wn. App. 388, 30 P.3d 529 (2001). The way courts have used the word "jurisdiction" has caused confusion. *State v. Posey*, 174 Wn.2d 131, 272 P.3d 840 (2012); *In re Marriage of McDermott*, 175 Wn. App. 467, 307 P.3d 717 (2013).

matter jurisdiction where it has authority "to adjudicate the type of controversy involved in the action." *Shoop v. Kittitas County*, 108 Wn. App. 388, 393, 30 P.3d 529 (2001).

Superior courts in Washington have jurisdiction in matters involving dissolutions. WASH. CONST. art. IV, § 6; *In re Marriage of Buecking*, 179 Wn.2d 438, 448-50, 316 P.3d 999 (2013). The fact that the superior court did not have the authority to enforce a division of Social Security benefits does not render it without subject matter jurisdiction over the dissolution. However, the issue is not resolved with this conclusion.

The dispute in this matter centers around 42 U.S.C. § 407(a), which prohibits a beneficiary from transferring or assigning his or her benefits to another, and forbids the use of legal processes to attempt to reach such benefits.

> The right of any person to any future payment under this subchapter shall not be transferrable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a).

The prohibitions in § 407(a) do not apply to reassignment of benefits to pay for alimony or child support, but do exclude payments or transfers "in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii).

The issue presented in this case is one of first impression in Washington; however, other jurisdictions have addressed it. The leading case appears to be *Boulter v. Boulter*, 113 Nev. 74, 930 P.2d 112 (1997). In that case, the trial court entered a divorce decree that incorporated a property settlement agreement. *Boulter*, 930 P.2d at 112-13. Eight months later, one party sought to enforce the portion of the decree that divided Social Security benefits. *Boulter*, 930 P.2d at 112-

9

13. The appellate court reversed the trial court's order enforcing the decree. *Boulter*, 930 P.2d at 114. In so doing, it reviewed the anti-assignment statute of the Social Security Act and decided that the Supremacy Clause[6] preempted any state action that conflicted with federal law. *Boulter*, 930 P.2d at 114. It relied on the United State Supreme Court's precedent that imposes "a broad bar against the used of any legal process to reach all social security benefits." *Boulter*, 930 P.2d at 114 (quoting *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973)).

The trial court's action "constitute[d] state action that has been preempted by the federal Social Security Act." *Boulter*, 930 P.2d at 114. The court was "without power" to take the action it took regarding Social Security benefits. *Boulter*, 930 P.2d at 114. It so ruled, notwithstanding the fact that the parties entered into the agreement voluntarily. *Boulter*, 930 P.2d at 114-15. The court finally concluded that, "[u]nder 42 U.S.C. § 407(a), the district court was without jurisdiction to enforce an award of [the] social security benefits." *Boulter*, 930 P.2d at 115.

One month after *Boulter* issued, the Arkansas Supreme Court cited to it and followed its reasoning. In *Gentry v. Gentry*, 327 Ark. 266, 938 S.W.2d 231, 232 (1997), the court cited to numerous cases, including *Boulter*, for the proposition that "The thrust of these decisions is that state courts are without power to take any action to enforce a private agreement dividing future payments of Social Security when such an agreement violates the statutory prohibition against transfer or assignment of future benefits." In conclusion, the court ruled that the trial court that issued the order enforcing the agreement "was without jurisdiction to enforce an award of one-half of his Social Security" to another. *Gentry*, 938 S.W.2d at 233. *Gentry* used the term "without power" interchangeably with the term "without jurisdiction." 938 S.W.2d at 232-33.

---

[6] U.S. CONST. art. VI, cl. 2.

Subsequently, *In Re Marriage of Hulstrom*, 342 Ill. App. 3d 262, 794 N.E.2d 980, 989 (2003) concluded that it was, "in agreement with *Boulter* and *Gentry*, that a state court lacks jurisdiction to enforce a marital settlement agreement that divides future payments of [S]ocial [S]ecurity when such an agreement violates section 407(a) of the Social Security Act." It further held that, "the portion of the judgment dividing the marital assets is void for violating section 407(a) of the Social Security Act and the trial court lacked jurisdiction to enforce it." *Hulstrom*, 794 N.E.2d at 989.

In *In re Marriage of Anderson*, 252 P.3d 490 (Colo. App. 2010), the husband, in 2008, sought to set aside provisions of a 1994 dissolution decree that awarded his former spouse portions of his Social Security benefits. The decree incorporated a settlement agreement. In agreeing with the husband, *Anderson* held that the provision at issue was void. 292 P.3d at 494. *Anderson* said that the court entering the decree lacked jurisdiction to enter the order, and that it was without power to do so. 292 P.3d at 493-94.

Whether the appellate courts say a trial court is without power or that it lacks jurisdiction, the result is the same. The order that transfers, divides, or distributes Social Security benefits in violation of the Supremacy clause, federal preemption principles, and the Social Security Act is void.[7]

---

[7] This case is distinguishable from cases such as *In re Marriage of Brown*, 98 Wn.2d 46, 653 P.2d 602 (1982), and *In re Marriage of Weiser*, ___ Wn. App. ___, 475 P.3d 237 (2020), which held that the division of military retirement pay could not be collaterally attacked. In both of those cases, the decisions in the trial court were decided prior to controlling, adverse United States Supreme Court cases, *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981) (superseded by statute), and *Howell*, 137 S. Ct. 1400, respectively. Each of these cases clarified the law regarding division of military benefits in dissolution cases. *Brown* held that such a circumstance weighed in favor of holding that pre-*McCarty* retired pay division should be regarded

II.     EQUITABLE DOCTRINES OF LACHES, WAIVER, AND EQUITABLE ESTOPPEL[8]

Hagar argues that Tupper's claim is barred by the equitable doctrines of laches, waiver and equitable estoppel. We disagree.

The application of an equitable doctrine, such as laches, waiver, or equitable estoppel, is a question of law that this court reviews de novo. *Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005).

A.      Laches

Hagar argues that Tupper's cause of action should be barred by the equitable doctrine of laches. Because Hagar did not meet her burden to show damages or prejudice sufficient to support laches, we disagree.

---

as an error of law rather than a lack of subject matter jurisdiction. 98 Wn.2d at 48. Because errors of law are voidable, the division could not be collaterally attacked.

The *Brown* court reasoned that the principles of Restatement (Second) of Judgments § 12 (1982), that include whether the subject matter was "'so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority'" weighed in favor of precluding collateral attack of the judgment. *Brown*, 98 Wn.2d at 50.

We have no similar circumstance here. In 2006 when the trial court divided Tupper's Social Security benefits, the law was clear that a state court had no such authority. *Zahm* was decided seven years earlier in 1999. 138 Wn.2d 213. Thus, the division of Tupper's benefits was plainly beyond the court's jurisdiction at its inception. Nor do the other principles in section 12 of the Restatement help Hagar. Allowing the judgment to stand would not substantially infringe the authority of another tribunal or government agency, nor was the trial court here lacking the capability to make an adequately informed determination of the question of its authority. Restatement § 12.

[8] Even though we conclude that the order was void, we resolve the equitable issues. *See In re Marriage of Markowski*, 50 Wn. App. 633, 638, 749 P.2d 754 (1988) (a party may still be estopped from challenging a decree that is void if the party who previously procured or consented to such a decree "has obtained a benefit therefrom.").

Laches is an equitable doctrine courts apply to protect a party from an unreasonable prejudicial delay. *Rutter v. Estate of Rutter*, 59 Wn.2d 781, 784-85, 370 P.2d 862 (1962); *Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 848-49, 991 P.2d 1161 (2000). Laches is an extraordinary remedy that should be used sparingly. *Brost v. L.A.N.D., Inc.*, 37 Wn. App. 372, 376, 680 P.2d 453 (1984). The party asserting laches bears the burden of proof. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 77, 277 P.3d 18 (2012).

To successfully assert laches, the party employing the doctrine must prove "'(1) inexcusable delay and (2) prejudice to the other party from such delay.'" *Auto. United Trades Org. v. State*, 175 Wn.2d 537, 542, 286 P.3d 377 (2012) (quoting *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 241, 88 P.3d 375 (2004)). The main component, however, "is not so much the period of delay in bringing the action, but the resulting prejudice and damage to others." *Clark County Pub. Util.*, 139 Wn.2d at 849. Laches will not successfully bar a claim unless the party asserting the doctrine has proven that she has so altered her position that it would be inequitable to enforce the claim. *Rutter*, 59 Wn.2d at 785. Mere delay, lapse of time, and acquiescence are insufficient to establish laches. *Rutter*, 59 Wn.2d at 785.

Hagar, who filed a motion for an order to show cause for enforcement of the decree of dissolution in 2018, asserts that she will be damaged by Tupper's prior failure to contest the division of his Social Security benefits, because she will be deprived of the bargain she negotiated with Tupper in 2006. Hagar also asserts that Tupper's failure to challenge the provision earlier is unfairly prejudicial because, in the case that the property distribution needs an overall reassessment to maintain fairness, it could be impossible for a court in 2020 to divide property holdings as they existed in 2006.

As stated above, in order to successfully prove the doctrine of laches, Hagar must show that she has so altered her position that it would be inequitable to enforce the claim. Hagar has shown a significant lapse of time between the initial entry of the order and Tupper's decision to contest, but that lapse can also be attributed to Hagar's motion to compel enforcement, and is insufficient to support a claim of laches. Bearing in mind that laches is an extraordinary remedy, Hagar has offered insufficient evidence to show that she has been unfairly damaged or prejudiced by the delay. Accordingly, we conclude that Hagar did not meet her burden to show damages or prejudice sufficient to support laches. In addition, we fashion a remedy that takes into consideration Hagar's concerns.

B.      Equitable Estoppel

Hagar argues that Tupper should be equitably estopped from challenging the provision awarding her 50 percent of his Social Security benefit. We disagree.

The doctrine of equitable estoppel may apply when one party has made a statement, admission, or act that has been justifiably relied on to the detriment of another party. *Lybbert v. Grant County*, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000). Equitable estoppel is disfavored, and therefore must be proven by "clear, cogent and convincing evidence." *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 831, 881 P.2d 986 (1994).

To prove equitable estoppel, the asserting party must show: (1) an admission, act or statement inconsistent with a later claim; (2) another party's reasonable reliance on the admission, act or statement; and (3) a resulting injury to the relying party if the party making the admission, act, or statement is permitted to contradict or repudiate the earlier admission, act or statement. *Dep't. of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 20, 43 P.3d 4 (2002).

14

In support of equitable estoppel, Hagar identifies only (1) Tupper's agreement, through mediation, to pay her 50 percent of his Social Security benefits, (2) her action to enforce the dissolution decree, and (3) the loss of her award of 50 percent of Tupper's Social Security benefits. The parties reached an agreement through mediation in 2006. Tupper began receiving Social Security benefits in 2016. Hagar filed a motion to show cause for enforcement in 2018. It is undisputed that Tupper has made no payments from his Social Security benefits to Hagar.

Hagar presented no evidence that Tupper knew the division was prohibited by federal law when they entered the agreement, nor did she offer evidence in support of her claim that the agreement to divide Tupper's Social Security benefits was "a material part of their agreement to enter the [d]ecree and be bound by its terms." Br. of Resp't at 19. Aside from citing her initiation of the enforcement action, Hagar also presented no evidence of her reliance on the agreement in question, or offer an explanation of why she waited two years to file the enforcement action.

As stated above, equitable estoppel is disfavored, and the party claiming it is held to a high standard. Hagar failed to meet that standard and prove, by clear, cogent, and convincing evidence, that Tupper's challenge to the provision awarding her 50 percent of his Social Security benefits should be blocked by the doctrine of equitable estoppel. Hagar failed to meet her burden.

C.      Waiver

The parties make very brief arguments regarding waiver. Hagar argues that, by participating in the superior court proceedings, Tupper waived any jurisdictional objections. We disagree with Hagar.

A waiver is the intentional and voluntary relinquishment of a known right, or conduct that warrants an inference of the relinquishment of such a right. *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 255, 928 P.2d 1127 (1996). The party claiming waiver has the burden

15

of proof to show that the other party intended to relinquish the right or advantage in question. *Dombrosky*, 84 Wn. App. at 255.[9] Hagar bears the burden of proof and she failed to prove that Tupper intended to relinquish his right to make jurisdictional challenges to the decree.

III.    REMEDY

Tupper requests that we reverse the order dividing the Social Security benefits and conclude it is unenforceable and that we should strike it. Although we agree that the order should be reversed, we fashion a different remedy, persuaded by the reasoning of other courts that have dealt with this issue.

In *Hulstrom* and *Anderson*, the courts remanded the cases. *Hulstrom* remanded the case to reconsider "all of the marital settlement issues consistent with the Marriage Act and this opinion." 794 N.E.2d at 989. "We acknowledge that the passage of time and the parties' adherence to the original defective judgment will complicate an equitable division of the marital property, but we conclude that a remand is nevertheless necessary because the original property division is void and an affirmance would perpetuate the error contrary to the mandate of the Social Security Act." *Hulstrom*, 794 N.E.2d at 989. *Anderson* remanded the case, "with directions that the district court reconsider the entire 1994 property division, recognizing that the passage of time and the parties' long adherence to the decree will undoubtedly, and unfortunately, present the district court with a difficult task." 292 P.3d at 496.

We believe the remedy imposed by these courts is appropriate and fair. It returns the parties to the position they should have been in at the time the court entered the order. As noted above,

---

[9] In support of her argument, Hagar cites only *In re Marriage of Maddix*, 41 Wn. App. 248, 703 P.2d 1062 (1985), which involved a waiver of personal jurisdiction after improper service. Tupper cites only *Washington Local Lodge No. 104 v. International Brotherhood of Boilermakers*, 28 Wn.2d 536, 544, 183 P.2d 504, 189 P.2d 648 (1947), which involves a failure to exhaust internal remedies for nonfinancial, internal, disciplinary actions within a voluntary association.

we also understand the difficult position the court is placed in on remand, but we have confidence in its ability to resolve the matter.

IV.    ATTORNEY FEES

Hagar requests attorney fees under RCW 26.09.140 and RAP 18.1. Tupper argues that we should deny Hagar's request. The parties have filed financial affidavits as required by RAP 18.1(c). We decline to award attorney fees.

RAP 18.1(1)(a) provides that we may grant attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RCW 26.09.140 allows us to award reasonable costs and attorney fees to either party on appeal "after considering the financial resources of both parties." An award of attorney fees under RCW 26.09.140 is based on consideration of "'the parties' relative ability to pay'" and "'the arguable merit of the issues raised on appeal.'" *In re Marriage of Muhammad*, 153 Wn.2d 795, 807, 108 P.3d 779 (2005) (quoting *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998)).

Here, Tupper's monthly income is greater than Hagar's. However, Tupper also has somewhat higher expenses, significantly more debt, and significantly fewer liquid assets than Hagar. Although Tupper's income is significantly higher than Hagar's, because of the disparity in debt, expenses, and liquid assets, and due to the uncertainty caused by COVID-19, the parties' ability to pay is approximately the same. Also, Tupper, not Hagar, prevails on appeal; therefore, by definition, Tupper has raised an issue on appeal that has arguable merit. *Muhammed*, 153 Wn.2d at 807. Accordingly, we deny Hagar's request for attorney fees under RAP 18.1 and RCW 26.09.140.

CONCLUSION

Because the Superior Court's order dividing Tupper's Social Security benefit is void, we reverse and remand the case to the trial court to reconsider the entire property division.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Sutton, A.C.J. (concur in result)