

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DISH NETWORK, LLC, a Colorado limited liability company, | ) ) ) | No. 39496-4-III |
| Respondent / Cross Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | ) ) ) | |
| Appellant / Cross Respondent. | ) ) | |

PENNELL, J. — This case involves cross appeals of a tax refund decision. The trial

court decided DISH Network, LLC (DISH) was entitled to a refund of penalties and

a partial refund of interest after the Department of Revenue misstated DISH's tax

obligation calculations through an inaccurate audit worksheet. Dissatisfied with this

result, DISH argues it should get a full refund. Also dissatisfied, the Department claims

DISH is not entitled to any refund. Both sides take their positions too far. While we do

not agree with all of the trial court's analysis, we affirm the court's ultimate disposition.

No. 39496-4-III
*DISH Network, LLC v. Dep't of Revenue*

FACTUAL AND PROCEDURAL BACKGROUND

DISH[1] is a Colorado-based nationwide provider of direct-to-home satellite television service. DISH incurs the majority of its operation costs in states other than Washington. One of DISH's largest expenses is the cost associated with buying television programming from content providers (programming costs), which DISH then delivers to viewers through satellite dishes.

Washington imposes a business and occupation (B&O) tax on "every person that has a substantial nexus with this state . . . for the act or privilege of engaging in business activities." RCW 82.04.220(1). The tax is levied against the taxpayer's gross sales. *Id*. For a taxpayer like DISH, whose sales are taxable in multiple states, the tax applies only to income that is apportioned to Washington. RCW 82.04.460(1). Apportionment of income is based on the portion of income derived from services rendered within the state. *Id*. During the time relevant to the parties' suit, Washington's B&O statute specified that apportionment of income should be calculated using the "cost apportionment" method if it could not accurately be calculated by what is known as the "separate accounting"

---

[1] DISH was previously called Echostar Satellite, LLC (Echostar). The company is identified as DISH starting with its May 2008 Washington excise tax return. DISH and Echostar are the same entity, and the taxpayer identification number remained the same after the name change. For simplicity and readability, we refer to the company as DISH even though in the record on review it is also identified as Echostar.

method. Former RCW 82.04.460(1) (2004).[2]

In the late 1990s and early 2000s, the Department conducted audits of DISH that addressed questions regarding whether DISH owed B&O taxes and, if so, what method should be used for calculating income. The audits resulted in written administrative rulings explaining that DISH was responsible for paying B&O taxes and that it must use the cost apportionment method in calculating its taxable income.

Effective January 1, 2006, the Department made extensive amendments to former WAC 458-20-194 (1983) (also known as Rule 194) to provide more detailed and specific guidance on calculating tax by the cost apportionment method. *See* Wash. St. Reg. 05-24-054. Rule 194 would now explain that cost apportionment was the ratio of the cost of doing business in Washington divided by a company's worldwide business costs. WAC 458-20-194(4)(a)(ii).

In February 2007, the Department completed an audit of DISH's excise tax returns for the period running from January 1 through June 30, 2004. The audit resulted in an assessment of additional tax. As explanation, the Department asserted DISH should have

---

[2] "'Separate accounting' refers to a method of accounting that segregates and identifies sources or activities that account for the generation of income within the state of Washington. Separate accounting is distinct from cost apportionment, which assigns a formulary portion of total worldwide income to Washington." WAC 458-20-194(3)(a).

been calculating its B&O tax according to the separate accounting method, not the cost apportionment formula.

DISH filed an administrative appeal, arguing that it remained entitled to use the cost apportionment method. The Department's Appeals Division agreed. *See* Clerk's Papers (CP) at 393-406 (Pl.'s Ex. 9) The Appeals Division determined DISH was entitled to use the cost apportionment method as set forth in previous administrative decisions and instructions. The May 2008 decision also stated DISH should utilize Rule 194, as amended in 2006, to calculate future taxes. The decision included a statement that DISH would receive further information from the Department's Audit Division.

A few months later, in October 2008, the Department followed up on the Appeals Division determination with an amended audit report for the tax period January 1 through June 30, 2004. Attached to the amended audit report was Workpaper A, which showed the Department's line-by-line cost apportionment calculations. The audit report instructed DISH to "[r]efer to apportionment Workpaper A for the cost apportionment detail." CP at 411 (Pl.'s Ex. 10 at 4). Workpaper A included an itemized list of "Total Washington Expenses" to be included in the cost apportionment formula. *Id*. at 418 (Pl.'s Ex. 10 at 11). DISH's programming costs were not included as expenses in the

Workpaper A itemization. The amended audit report included a comment directing DISH to contact the auditor or audit manager with any questions.

In July 2011, the Department conducted an audit of DISH's excise tax returns covering the four-year period of January 1, 2006 through December 31, 2009. The audit concluded DISH failed to accurately report its B&O income by excluding its programming costs from the apportionment formula. The audit claimed DISH owed $9,325,106 in unpaid B&O taxes. The Department determined the total amount due, which included penalties and interest, to be $11,959,168.

DISH again filed an administrative appeal. This time DISH lost. In its August 2012 written decision, the Appeals Division explained DISH should have been "using the cost apportionment method required by the version of Rule 194 amended effective 2006." *Id*. at 291 (Pl.'s Ex. 5 at 5). Under this method, programming costs should have been included in the numerator of the cost ratio. The failure to include programming costs in the calculation resulted in a smaller cost ratio and significant undercalculation of excise tax liability. The Appeals Division upheld the Department's assessment of outstanding taxes, but modified a portion of the penalty. The revised total amount assessed to DISH was $11,838,527.

DISH paid the revised assessment under protest and then filed an action in Thurston County Superior Court seeking a full refund. DISH claimed it was not liable for unpaid taxes, and associated penalties and interest, under theories of collateral estoppel and waiver.

The matter proceeded to a two-day bench trial. DISH's sole witness was its senior tax manager, Marin Noli. Mr. Noli testified that he was not involved in preparing the 2006 through 2009 tax returns, but he was aware of DISH's general practices. According to Mr. Noli, the calculations in the Department's October 2008 amended audit report and Workpaper A were consistent with DISH's existing accounting practices in that it excluded programming costs from the cost apportionment ratio. Mr. Noli explained that he interpreted this consistency to mean that the Department had "accepted [DISH's] calculation." Rep. of Proc. (RP) (May 17, 2021) at 61. Mr. Noli testified that if the Department were to propose a tax calculation that differed from DISH's approach, then DISH would respond by either appealing the issue or amending its returns. Any amended returns could be completed "within the month." *Id.* at 37-38.

The trial court granted DISH relief on the "alternative and separate grounds" of estoppel and statutory waiver. CP at 1054. The court's findings were consistent with the above summary and also included the following:

- "[T]he Department and its Audit Division knew of DISH's out-of-state programming costs." *Id.* at 1041.

- "The 2008 amended assessment letter told DISH how to calculate its B&O tax liability. . . . The Audit Division's cost apportionment calculation, however, did not include any of DISH's programming costs." *Id*. at 1042.

- "DISH calculated its tax for the entire disputed audit period in the same way that the auditor did—and just as the auditor told DISH to do—by referring to the workpapers." *Id*.

- "The Department's 2012 decision was contrary to and inconsistent with its 2008 determination and the specific written instructions provided to DISH by the Audit Division in the 2008 amended assessment letter. Specifically, The Department's conclusion in the instant audit that DISH should have included out-of-state programming costs in its apportionment calculation was inconsistent with the Department's prior statement." *Id*. at 1042-43.

- "DISH relied on the prior statement as confirmation of the correctness of DISH's apportionment calculation, foregoing the opportunity to amend its prior returns and to adjust its returns going forward—opportunities that cost DISH millions in

7

penalties, interest, and the difficulty of recovering the underpaid tax through its business operations." *Id*. at 1043.

- "[T]he 2008 amended assessment letter constituted erroneous written information provided to the taxpayer, upon which the taxpayer relied in calculating its tax for periods following October 2008 and in foregoing its ability to file amended returns for prior tax periods. The issuance of such erroneous written information constitutes a circumstance beyond the control of the taxpayer." *Id*. at 1045.

The trial court initially did not specify a refund amount and instead instructed the parties to meet and confer to propose a final judgment. The parties were unable to reach agreement. DISH claimed it was entitled to a full refund of all taxes, penalties and interest. The Department claimed the trial court's findings warranted only a refund of penalties.

The court's ultimate ruling struck a middle ground, designed to "put the parties in a position they would have been if the tax had been properly calculated in the first place." RP (Sep. 17, 2021) at 15. The court determined that its estoppel ruling did not bar the Department from collecting approximately $9 million in B&O back taxes from DISH. The court also ruled the Department could keep payments on interest accrued before 2009, since any nonpayment of interest during that period could not be attributed to

misinformation supplied in Workpaper A. However, the court determined DISH was entitled to a partial refund of interest, reasoning that had the Department not provided inaccurate information in the October 2008 amended audit report Workpaper A, DISH would have amended its tax returns by January 1, 2009. The court also ruled DISH was entitled to a refund of the Department's penalties. The final written judgment specified DISH was entitled to a refund in the amount of $1,700,198.[3]

The Department timely appealed the trial court's order granting DISH's demand for relief and the subsequent judgment. DISH cross appealed the court's failure to award a full tax refund. A Division Three panel considered this appeal with oral argument after receiving an administrative transfer of the case from Division Two.

ANALYSIS

The trial court's refund decision rested on alternate theories of equitable estoppel and statutory waiver. As explained below, we disagree with the trial court's conclusion that DISH established equitable estoppel. Nevertheless, we agree with the trial court's analysis of statutory waiver. The end result is that the trial court's judgment is affirmed.

---

[3] The court's judgment includes a table detailing the penalties and interest that were subject to refund, broken down by tax year. *See* CP at 1087.

*Equitable estoppel*

The parties both appeal from the trial court's ruling on equitable estoppel. The Department contends DISH did not prove all the elements of equitable estoppel. Thus, the trial court should not have granted relief on this basis. DISH counters that not only was equitable estoppel justified, it should have resulted in a full refund of all back taxes, not just a refund of penalties and interest. We agree with the Department that DISH did not establish all elements of equitable estoppel. As a result, DISH's cross appeal must fail.

Equitable estoppel prevents a party from taking a position inconsistent with a previous one where inequitable consequences would result to a party who has justifiably and in good faith relied on the earlier statement. *Kramarevcky v. Dep't of Soc. & Health Servs.,* 122 Wn.2d 738, 743, 863 P.2d 535 (1993); *Wilson v. Westinghouse Elec. Corp.,* 85 Wn.2d 78, 81, 530 P.2d 298 (1975). When equitable estoppel is asserted against the government, the party asserting estoppel must establish five elements by clear, cogent, and convincing evidence: (1) a statement, admission, or act by the party to be estopped, which is inconsistent with its later claims, (2) the asserting party acted in reliance upon the statement or action, (3) injury would result to the asserting party if the other party were allowed to repudiate its prior statement or action, (4) estoppel is "necessary to

prevent a manifest injustice," and (5) estoppel will not impair governmental functions. *Kramarevcky,* 122 Wn.2d at 743.

DISH's theory of equitable estoppel was that the Department's 2008 amended audit report and workpaper amounted to a statement that out-of-state programming costs need not be included in calculating its B&O tax under the cost apportionment method. DISH argues it effectively relied on the 2008 report and workpaper when it continued its practice of excluding out-of-state programming costs from its tax calculations. Given this reliance, DISH argued the Department should be estopped from claiming DISH miscalculated its taxes during the 2006 through 2009 audit period. Because allowing the Department to change positions would result in DISH being obliged to pay significant back taxes and penalties, DISH contends the Department should be estopped from taking the position that DISH failed to pay its taxes during the 2006 through 2009 period.

The parties disagree as to the standard of review governing the sufficiency analysis. DISH claims the traditional substantial evidence test applies. *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993). According to the Department, a heightened standard applies, which considers DISH's burden of proving estoppel by clear, cogent, and convincing evidence. *See In re Marriage of*

*Tupper*, 15 Wn. App. 2d 796, 812-13, 478 P.3d 1132 (2020). We need not resolve this dispute. Regardless of which standard applies, DISH is not entitled to collateral estoppel.

The fatal flaw in DISH's collateral estoppel claim is the lack of evidence in support of the second element. This element requires more than passive reliance. Instead, the party asserting estoppel must show that it "*changed* [its] position in reliance upon the representations or conduct of the [Department]." *Sorenson v. Pyeatt*, 158 Wn.2d 523, 540, 146 P.3d 1172 (2006) (emphasis added) (citing 31 C.J.S. *Estoppel and Waiver* §§ 59, 78 (1996) and *Elmonte Inv. Co. v. Schafer Bros. Logging Co.,* 192 Wash. 1, 72 P.2d 311 (1937)).

The undisputed evidence shows DISH did not change its conduct in response to the 2008 amended audit report and Workpaper A. The cost apportionment calculations itemized in Workpaper A were consistent with DISH's past practices. In fact, Mr. Noli testified he interpreted Workpaper A to mean that the Department had accepted DISH's method of calculation. Given the consistency, DISH did not change its tax calculations. While Mr. Noli testified that DISH would have taken some sort of corrective action had Workpaper A disclosed some flaw in DISH's existing practices, this is not what happened. Estoppel does not apply in this circumstance.

*Waiver of penalties and interest*

The fact that DISH has not established collateral estoppel does not settle all of its arguments against the Department. DISH also claims that, regardless of estoppel, the Department was prohibited from imposing penalties and interest on DISH's tax deficiency pursuant to former RCW 82.32.105(1) and (3)(a) (1998). The trial court agreed with DISH as to these statutory provisions, and provided relief from penalties and interest as an alternate statutory remedy. We affirm this ruling.

We review a trial court's interpretation of a statute de novo. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). If we agree with the trial court's interpretation, we give broad deference to the court's factual findings pursuant to the terms of the statute. *See In re Pennington*, 142 Wn.2d 592, 602-603, 14 P.3d 764 (2000).

Under former RCW 82.32.105(1), the Department was required to waive or cancel penalties if it found a business had not paid a tax by the due date because of "circumstances beyond the control of the taxpayer." Circumstances beyond the control of the taxpayer include "[e]rroneous written information given to the taxpayer by a [D]epartment officer or employee." Former WAC 458-20-228(9)(a)(ii)(B) (2010). Similarly, former RCW 82.32.105(3)(a) required waiver or cancellation of interest if a taxpayer's failure to make timely payment "was the direct result of written instructions

given the taxpayer by the [D]epartment."

The trial court found the 2008 amended audit and Worksheet A constituted erroneous written information that caused DISH to persist in its practice of excluding out-of-state programming costs in calculating its taxes "for periods following October 2008." CP at 1045. As a result, the trial court concluded the Department was required to waive penalties and interest pursuant to former RCW 82.32.105.[4] Substantial evidence supports the trial court's findings and we agree with the court's legal conclusions.

The Department challenges the trial court's findings and conclusions, pointing out that even if the instructions in the October 2008 amended audit report and Workpaper A were erroneous, that did not apply to the 2006 through 2009 audit period. As pointed out in the Appeals Division's May 2008 Determination, DISH should have followed Rule 194's guidance on calculating cost apportionment for the tax periods starting in 2006.

We disagree with the Department that Rule 194 contains sufficient guidance to discount the 2008 amended report and Workpaper A. Rule 194 did not purport to change

---

[4] The trial court's order does not differentiate between penalties under former RCW 82.32.105(1) and interest under former RCW 82.32.105(3)(a). Instead, the trial court generally referred to RCW 82.32.105. The trial court's failure to distinguish subsections (1) and (3)(a) of the statute was not error given that the "circumstances beyond the control" of DISH was the "[e]rroneous written information" issued by the Department in 2008. Former WAC 458-20-228(9)(a)(ii)(B).

14

existing law, it just provided guidance on how to calculate cost apportionment. The guidance set forth in Rule 194 was not specific to DISH's unique business model. It also allowed that certain kinds of costs could be excluded from the apportionment formula, so long as there was Department approval. *See* WAC 458-20-194(4)(i). Given the 2008 report and worksheet postdated the extensive changes to Rule 194, it was reasonable for DISH to assume that the calculations set forth in the worksheet constituted the Department's understanding of cost apportionment, consistent with the January 1, 2006, amendments to Rule 194.

The Department also challenges the trial court's decision to waive penalties and a portion of the interest given DISH did not receive any erroneous information from the Department until October 2008, which was midway through the 2006 through 2009 audit period. Again, we disagree with this criticism. Mr. Noli's undisputed trial testimony was that had the amended report and workpaper included instructions to include programming costs in the tax calculation, DISH could have amended its 2006 through 2008 tax returns to pay the adjusted tax, thus leaving no tax unpaid and avoiding the underpayment penalty and interest. It is beside the point whether under this counter-factual scenario DISH actually would have submitted timely amendments instead of challenging the Department's calculations. Because the Department provided in 2008 what was only

15

later discovered to be erroneous information, DISH lost the opportunity to timely amend

the prior tax returns. This was a "circumstance[] beyond the control" of DISH, mandating

a waiver of penalties under RCW 82.32.105(1) and interest under RCW 82.32.105(3)(a).

Former WAC 458-20-228(9)(a)(ii)(B).

## CONCLUSION

While we disagree with some of the reasoning, we affirm the trial court's bottom

line. DISH is not entitled to a full tax refund or a refund of pre-2009 interest. However,

because the Department supplied DISH with erroneous written information that deprived

DISH of an opportunity to timely amend its tax returns, DISH is entitled to a refund of

penalties and interest that could have been averted had the Department's information been

accurate. The trial court's judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____     _____
Fearing, C.J.                       Lawrence-Berrey, J.

16