No. 2--02--0960

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

In
 
re
 MARRIAGE OF ) Appeal from the Circuit Court

EVERETT E. HULSTROM, ) of Lee County.

)

Petitioner-Appellant, )

)

and ) No. 94--D--90

)

ILA J. HULSTROM, ) Honorable

) David T. Fritts,

Respondent-Appellee. ) Judge, Presiding.

_________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Petitioner, Everett E. Hulstrom, appeals from the order of the circuit court denying his petition to modify the judgment dissolving the parties' marriage.  We reverse as void the portion of the dissolution judgment dividing the marital property, and we remand the cause with directions.

FACTS

On August 19, 1994, the trial court dissolved the parties' 46-year marriage and incorporated their marital settlement agreement into the judgment.  At the time of the dissolution, petitioner and respondent, Ila J. Hulstrom, were 67 and 65 years old, respectively, and each was receiving social security benefits.  The marital settlement agreement provides in relevant part:

"1. The Social Security paid on behalf of [petitioner] and [respondent] shall be combined monthly and paid to [respondent], where, on the tenth of each month, one-half of the combined Social Security payment shall be deposited by direct deposit from [respondent's] account into an account designated by [petitioner].  To the extent that such Social Security payments to either party are income, and to such an extent that the party who receives the greater amount of Social Security receives income from the party to whom the greatest amount of Social Security is paid, that amount of Social Security shall be income to the receiving party to the extent that it was income to the paying party.

* * *

8. To the fullest extent provided by law, each party waives maintenance now and all times in the future."

On May 24, 2002, petitioner petitioned to modify the portion of the judgment allocating the social security benefits.  Petitioner alleged that paragraph 1 of the settlement agreement "purports to distribute a Social Security benefit as a property right when, in fact and in law, it is a support matter."  Petitioner alleged that the parties should no longer share their social security benefits because (1) petitioner's income had decreased significantly; (2) his medical expenses had increased due to his failing health; (3) respondent had remarried and was financially secure; and (4) paragraphs 1 and 8 of the settlement agreement were inconsistent.

At a hearing on the petition, petitioner testified to his declining income and deteriorating health, including a form of Parkinson's disease from which he suffers.  Petitioner and respondent had each remarried, but respondent did not notify petitioner of her remarriage.

On July 25, 2002, the trial court denied the petition to modify the judgment, finding that the parties had followed the settlement agreement for eight years and had never treated the equal division of social security benefits as maintenance.  The court concluded that respondent's remarriage would not end her right to one-half of the couple's benefits because the parties had viewed them as marital property.  The court emphasized that the parties considered the equal division of benefits when dividing the remaining marital assets.  The court denied petitioner's subsequent motion to reconsider on August 30, 2002, and petitioner timely appealed on September 4, 2002.

ANALYSIS

On appeal, petitioner argues that the trial court erroneously determined that the equal division of the parties' social security benefits was an unmodifiable distribution of marital property, rather than a modifiable maintenance obligation that terminated automatically upon respondent's remarriage.  Petitioner presents two theories on appeal: (1) because state trial courts lack jurisdiction to order the division of social security benefits in marriage dissolution cases, the marital settlement agreement disposing of the parties' social security benefits may not be enforced; and (2) even if the circuit court had jurisdiction over the issue, the social security benefits qualify as "maintenance" rather than "marital property" under the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (see 750 ILCS 5/503(a), 504(a) (West 2000)).

Respondent alternatively contends that (1) the agreement's social security provision is a valid allocation of marital property rather than a description of petitioner's prospective maintenance obligation and (2) if this court decides that the provision is invalid, a new hearing is necessary for the redistribution of the marital assets.

The issue of whether a state trial court lacks jurisdiction to enforce the provision of a marital settlement agreement dividing social security benefits is a question of first impression in Illinois.  However, two other jurisdictions have ruled that a settlement agreement dividing such benefits as marital property is void for violating the anti-alienation provision of the Social Security Act (42 U.S.C. §407(a) (2000)).  
Gentry v. Gentry
, 327 Ark. 266, 938 S.W.2d 231 (1997); 
Boulter v. Boulter
, 113 Nev. 74, 930 P.2d 112 (1997).
  We find these cases to be persuasive and directly on point.

It is well settled that, under the supremacy clause of the United States Constitution, a federal law preempts a conflicting state law and the state law is nullified to the extent that it actually conflicts with federal law.  U.S. Const., art. VI; 
In re Marriage of Wiseman
, 316 Ill. App. 3d 631, 637 (2000).

Section 407(a) of the Social Security Act provides as follows:

"(a) The right of any person to any future payment under this subchapter shall not be transferrable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."  42 U.S.C. §407(a) (2000).

The Supreme Court has stated that section 407(a) imposes "a broad bar against the use of any legal process to reach all social security benefits."  
Philpott v. Essex County Welfare Board
, 409 U.S. 413, 417, 34 L. Ed. 2d 608, 612,  93 S. Ct. 590, 592 (1973).  In 
Philpott
, the Court held that section 407(a) of the Social Security Act, which prohibits the use of "any legal process" to reach "social security benefits," bars all claimants, including a state.  
Philpott
, 409 U.S. at 417, 34 L. Ed. 2d at 612, 93 S. Ct. at 592.

In 
Hisquierdo v. Hisquierdo
, 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979), the Court interpreted section 231m(a) of the Railroad Retirement Act of 1974 (45 U.S.C. §231m(a) (1976)), which is virtually identical to section 407(a) of the Social Security Act.  The statute at issue in 
Hisquierdo
 provided that, "notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or to other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated."  45 U.S.C. §231m(a) (1976).  The Court stated that, by enacting such anti-assignment statutes, Congress has "afforded recipients [protection] from creditors, taxgatherers, and all those who would 'anticipate' the receipt of benefits."  
Hisquierdo
, 439 U.S. at 575-76, 59 L. Ed. 2d at 7, 99 S. Ct. at 805.

In 
Boulter
, the trial court dissolved the parties' 37-year marriage and incorporated a property settlement agreement into the judgment of dissolution.  Pursuant to paragraph 4E of the agreement, the parties agreed to pool and divide equally the social security benefits accrued during the marriage.  
Boulter
, 113 Nev. at 75, 930 P.2d at 113.  When the husband turned 65 years old, he refused to apply for social security benefits, and the wife moved to enforce the agreement.  The trial court granted the wife's motion, and the husband appealed.

Relying upon 
Philpott
 and 
Hisquierdo
, the Nevada Supreme Court held that the trial court's incorporation of the property settlement agreement into the divorce decree qualified as state action that had been preempted by section 407(a) of the Social Security Act.  The 
Boulter
 court also quoted with approval the Illinois Appellate Court, which had stated that " ' "[t]he [Social Security Act], consistent with its remedial purpose, provides for the various contingencies of life including the dissolution of marriage.  Since the statute itself provides for the equitable distribution of its benefits to *** divorced spouses, *** we will not disturb the statutory scheme by suggesting 
any
 award of 
any
 part of the actual social security retirement benefits to which respondent may be entitled upon his reaching retirement age." ' "  (Emphasis added.
)  
Boulter
, 113 Nev. at 77, 930 P.2d at 113 quoting, 
In re Marriage of Hawkins
, 160 Ill. App. 3d 71, 77-78 (1987), quoting 
In re Marriage of Evans
, 85 Ill. App. 3d 260, 263 (1980), 
rev'd on other grounds
, 85 Ill. 2d 523 (1981).

The 
Boulter
 court then ruled that, "[b]ecause the [trial] court was without power to take any action regarding the parties' social security benefits, paragraph 4E [the settlement provision dividing the accrued but unpaid social security benefits] was not properly incorporated into the divorce decree.  Accordingly, this court may not sustain the district court order enforcing paragraph 4E of the decree."  
Boulter
, 113 Nev. at 78, 930 P.2d at 114.

The wife alternatively asserted that the voluntary nature of the settlement agreement obligated the husband to pay one-half of his social security benefits.  In rejecting the wife's argument, the 
Boulter
 court held that Congress's clear intent in enacting section 407(a) required the court to "strictly interpret that clause to prohibit voluntary as well as involuntary transfers or assignments."  
Boulter
, 113 Nev. at 78, 930 P.2d at 114-15.  The court noted:

"Although social security recipients may use the proceeds of their social security, after their receipt, to satisfy preexisting obligations [(
United States v. Eggen
, 984 F.2d 848 (7th Cir. 1993))], they may not contract to transfer their unpaid social security benefits.  Thus, in contracting to give [the wife] one-half of his benefits before he was eligible to receive them, [the husband] ineffectually 'transferred his right' to the benefits.  Because [the husband] and [the wife] attempted to transfer their rights to future benefits in violation of [section 407(a)], the agreement was invalid and neither this court nor the district court may order its enforcement."  
Boulter
, 113 Nev. at 78, 930 P.2d at 114.

Under similar facts, the Arkansas Supreme Court reached the same result in 
Gentry
.  In that case, the parties entered into a martial settlement agreement that provided, "[i]n the event that the husband is entitled to Social Security payments, the wife shall be entitled and shall receive one-half of all payments that are made to him."  
Gentry
, 327 Ark. at 267, 938 S.W.2d at 232.  The husband declined to pay one-half of his benefits when he began receiving them, and the wife filed a petition for a citation of contempt to enforce the agreement.  The trial court granted the petition, ruling that the husband owed one-half of both his paid and unpaid benefits.

Citing 
Philpott
, 
Hisquierdo
, and 
Boulter
, the Arkansas Supreme Court held that "state courts are without power to take any action to enforce a private agreement dividing future payments of Social Security when such an agreement violates the [section 407(a)] statutory prohibition against transfer or assignment of future benefits."  
Gentry
, 327 Ark. at 269, 938 S.W.2d at 232.

The 
Gentry
 court noted that Congress had created a statutory exception to the anti-alienation provision of section 407(a) when it enacted section 659(a) of the Social Security Act in 1975.  
Gentry
, 327 Ark. at 270, 938 S.W.2d at 233.  Section 659(a) makes benefits subject "to legal process *** to provide child support or make alimony payments."  42 U.S.C. §659(a) (2000).  However, Congress specifically excluded from its definition of alimony any community-property settlement, equitable distribution of property, or other division of property between spouses.  42 U.S.C. §662(c) (2000). 
Gentry
 adopted the Rhode Island Supreme Court's interpretation of these sections in stating, " 'Social Security benefits may be reached by a former spouse for alimony or child support but not for property division.' "  
Gentry
, 327 Ark. at 270, 938 S.W.2d at 233, quoting 
Kirk v. Kirk
, 577 A.2d 976, 980 (R.I. 1990).  We agree with the Arkansas and Rhode Island courts' interpretation of these sections of the Act.

Therefore, in this case, the section 659(a) alimony exception to the anti-alienation rule of section 407(a) would render the settlement agreement's purported division of social security benefits valid only if the parties intended the transfer to be maintenance rather than a property division.  See 
Gentry
, 327 Ark. at 270, 938 S.W.2d at 233; 
Kirk
, 577 A.2d at 980.  The child support exception does not apply here because the parties' children are emancipated.  Therefore, we must next determine the meaning of paragraph 1 of the agreement.

Interpreting a marital settlement agreement is a matter of contract construction; the court seeks to effectuate the parties' intent.  
In re Marriage of Agustsson
, 223 Ill. App. 3d 510, 518 (1992).  Ordinarily, the language the parties use is the best indication of their intent.  
In re Marriage of Frain
, 258 Ill. App. 3d 475, 478 (1994).  When contract terminology is unambiguous, it must be given its plain and ordinary meaning.  
Frain
, 258 Ill. App. 3d at 478.  However, where the language is ambiguous, the trial court may receive parol evidence to decide what the parties intended.  
Pepper Construction Co. v. Transcontinental Insurance Co.
, 285 Ill. App. 3d 573, 576 (1996).  Whether an agreement is ambiguous is a question of law.  
In re Marriage of Wenc
, 294 Ill. App. 3d 239, 243 (1998); 
Pepper Construction Co.
, 285 Ill. App. 3d at 575-76.

We agree with the trial court that the parties treated the social security benefits as marital property rather than maintenance.  Paragraph 1 of the settlement agreement sets forth a procedure for pooling and dividing the benefits, and paragraphs 2 through 7 allocate assets that undisputedly qualify as marital property, including the marital residence, rental property, lawn mowers, automobiles, bicycles, tools, and checking and savings accounts.  Paragraph 8 provides that the parties waive any claims to prospective maintenance.  If we were to conclude that the division of the social security benefits qualified as maintenance, paragraph 1 would directly contradict paragraph 8.  The parties did not expressly identify the social security benefits as marital property, but such an interpretation reconciles paragraphs 1 and 8.

We conclude that the plain meaning of the unambiguous language of the settlement agreement indicates that the parties intended the social security benefits to be marital property rather than maintenance.  Therefore, we conclude that the anti-alienation rule of section 407(a) of the Social Security Act invalidates the agreement provision purporting to pool and divide equally the parties' future social security payments.  Parenthetically, we note that section 407(a) prohibits the transfer of the right of any person to future payment of social security benefits, including "moneys paid or payable" under the Act.  Therefore, section 407(a) applies equally to cases like 
Boulter
 and 
Gentry
, where fewer than both parties had begun receiving benefits at the time of the dissolution, and this case, where both parties were receiving benefits when they entered into the agreement.

Respondent next contends that, even if the settlement agreement was incorporated into the judgment in error, we should nevertheless enforce it because it is merely voidable and not void, and therefore not subject to petitioner's collateral attack.  We disagree.

The doctrine of 
res
 
judicata
, or estoppel by judgment, holds that " 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and as to them, it constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.' "  
Miller v. Balfour
, 303 Ill. App. 3d 209, 214-15 (1999), quoting 
Sobina v. Busby
, 62 Ill. App. 2d 1, 17 (1965).

However, the doctrine of 
res
 
judicata
 does not apply where a judgment is void, and void judgments are subject to collateral attack for lack of jurisdiction or fraud.  Jurisdiction involves not only the power to hear and determine a given case but also the power to grant the particular relief requested, and every act of the court beyond its jurisdiction is void.  
Miller
, 303 Ill. App. 3d at 215.  A voidable judgment is one entered erroneously by a court having jurisdiction and is not subject to collateral attack.  
People v. Davis
, 156 Ill. 2d 149, 155-56 (1993).  Petitioner's action is a collateral attack on the judgment because it is an attempt to impeach the judgment in an action other than that in which the judgment was entered.  See 
Juszczyk v. Flores
, 334 Ill. App. 3d 122, 126 (2002).

Our supreme court discussed the legal distinction between  void and voidable judgments in 
In re Marriage of Mitchell
, 181 Ill. 2d 169 (1998).  In 
Mitchell
, the parties entered into a marital settlement agreement, which set forth the husband's child support obligation in terms of a percentage of income, rather than an exact dollar amount as required by the applicable statute.  Pursuant to the agreement, the parties revisited the child support issue annually.  
Mitchell
, 181 Ill. 2d at 171.  Six years later, at a hearing on another issue, the trial court 
sua
 
sponte
 modified the  child support award after concluding that it was void and unenforceable for violating the statute.  The wife appealed.

On appeal, the husband argued that the trial court lost its jurisdiction by entering the judgment and subsequent orders that expressed the child support award in terms of a percentage of his income.  The supreme court agreed that the trial court had erred.  However, the supreme court cited the traditional rule that "[o]nce a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law."  
Mitchell
, 181 Ill. 2d at 174. Acknowledging that a judgment may be attacked collaterally as void if there is a total lack of jurisdiction, the 
Mitchell
 court held that the erroneous child support determination was merely voidable, and not void, because the trial court had subject matter jurisdiction over the parties, the dissolution proceedings, and the child support award.  
Mitchell
, 181 Ill. 2d at 175.

The 
Mitchell
 court also addressed the related issue of whether the trial court's subject matter jurisdiction was defective under  the Restatement (Second) of Judgments.  
Mitchell
, 181 Ill. 2d at 175.  Section 12 of the Restatement addresses the 
res
 
judicata
 effect of a judgment on an alleged defect in the subject matter jurisdiction of the court rendering the judgment.  Section 12 of the Restatement provides as follows:

"When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:

(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or 

(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government
; or 

(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction."  (Emphasis added.)  Restatement (Second) of Judgments §12 (1982).

Applying these criteria, the 
Mitchell
 court again concluded that the contested child support order was voidable rather than void, and hence not subject to collateral attack.  The court thus decided that, even if the defect in the child support order pertained to subject matter jurisdiction, section 12 of the Restatement would preclude a collateral attack on the order.  
Mitchell
, 181 Ill. 2d at 176.

As in 
Mitchell
, the parties in this case had the opportunity to bargain for, and to benefit from, the terms of the settlement agreement, including the division of prospective social security benefits.  The trial court had jurisdiction over the parties and the dissolution proceeding in general, and the court also had the authority to incorporate a marital settlement agreement into the judgment.  However, this case is otherwise distinguishable from 
Mitchell
.

In 
Mitchell
, the Marriage Act authorized the trial court to enter the child support order; but in this case, the property division section of the Marriage Act is preempted by the Social Security Act, which bars the transfer of social security benefits.  Because the trial court in this case lacked jurisdiction to divide the parties' social security benefits, the traditional rule governing void and voidable judgments, as restated in 
Mitchell
, indicates that the portion of the judgment allocating the marital property is void.

This conclusion is supported by an analysis of section 12 of the Restatement, which the 
Mitchell
 court cited with approval but declined to adopt expressly.  
Mitchell
, 181 Ill. 2d at 177.  The marital property division " 'substantially infringe[s] the authority of another tribunal or agency of government,' " in this case, the federal government.  
Mitchell
, 181 Ill. 2d at 176, quoting Restatement (Second) of Judgments §12 (1982).  We conclude that the portion of the judgment incorporating the settlement agreement is void rather than voidable.  We emphasize that the remainder of the judgment is valid.

After concluding that the trial courts lacked jurisdiction to enforce the agreements dividing the parties' social security benefits, the supreme courts in 
Boulter
 and 
Gentry
 reversed the judgments and remanded the causes for further proceedings.  
Gentry
, 327 Ark. at 271, 938 S.W.2d at 233; 
Boulter
, 113 Nev. at 80, 930 P.2d at 115
.  In 
Boulter
, the Nevada Supreme Court expressly directed the trial court to reconsider the property distribution.  
Boulter
, 113 Nev. at 80, 930 P.2d at 115.  We conclude that a similar reversal and remand is appropriate here.

We reject respondent's argument that we must enforce the erroneous property division because the parties have relied upon it since the marriage was dissolved in August 1994.  The doctrine of equitable estoppel does not preclude petitioner from attacking the validity of the marital property division because it is void.  Equitable estoppel arises when a party, by his words or conduct, intentionally or through culpable negligence, induces reasonable reliance by another on his representations and thus leads the other, as a result of that reliance, to change his position to his detriment.  
In re Marriage of Schlam
, 271 Ill. App. 3d 788, 794 (1995).  In 
Schlam
, this court held that the wife was equitably estopped from asserting that the trial court lacked subject matter jurisdiction to enter a settlement agreement regarding child support.  However, 
Schlam
 is distinguishable from this case, where the division of social security benefits implicates the supremacy clause and the Social Security Act.

We note that the related doctrine of estoppel by remarriage also does not apply here.  The rule provides that parties to a dissolution proceeding may be estopped from asserting that the trial court lacked either personal or subject matter jurisdiction.  It has long been held in Illinois that the acceptance of benefits of a dissolution judgment may "estop" a party from subsequently  challenging the validity of that judgment.  See, 
e.g.
, 
Schlam
, 271 Ill. App. 3d at 793.  Estoppel by remarriage is distinct from traditional notions of equitable estoppel, and the party supporting the enforcement of the dissolution judgment need not prove his or her detrimental reliance upon the judgment.  
Schlam
, 271 Ill. App. 3d at 793.  The rule does not apply here because (1) petitioner does not assert that the 
entire
 dissolution judgment is void and (2) the dissolution of the parties' marriage does not draw its validity from the property division.  See 
Schlam
, 271 Ill. App. 3d at 794.

In conclusion, we hold, in agreement with 
Boulter
 and 
Gentry
, that a state court lacks jurisdiction to enforce a marital settlement agreement that divides future payments of social security when such an agreement violates section 407(a) of the Social Security Act, which statutorily prohibits the transfer or assignment of future benefits.  Because the marital settlement agreement in this case transferred the parties' future social security payments as marital property rather than as maintenance or child support, the portion of the judgment dividing the marital assets is void for violating section 407(a) of the Social Security Act and the trial court lacked jurisdiction to enforce it.

The trial court generally had jurisdiction over the parties and the dissolution proceedings, but the trial court's incorporation of the defective settlement agreement into the judgment is void for lack of subject matter jurisdiction over the social security benefits.  In this case, the doctrines of 
res
 
judicata
, equitable estoppel, and estoppel by remarriage do not bar petitioner's challenge to the marital property division.

On remand, we direct the trial court to reconsider all of the marital settlement issues consistent with the Marriage Act and this opinion.  We acknowledge that the passage of time and the parties' adherence to the original defective judgment will complicate an equitable division of the marital property, but we conclude that a remand is nevertheless necessary because the original property division is void and an affirmance would perpetuate the error contrary to the mandate of the Social Security Act.

Finally, the parties' use and consumption of the marital property during the past eight years would make a redistribution of the entire marital estate nearly unworkable.  To avoid this dilemma, the parties may decide to renegotiate the division of prospective social security benefits by characterizing them as maintenance (see 
Gentry
, 327 Ark. at 270, 938 S.W.2d at 233) and leaving the remainder of the judgment undisturbed.  However, the parties have remarried, and section 510(c) of the Marriage Act provides that the obligation to pay maintenance ordinarily terminates upon the remarriage of the party receiving maintenance.  See 750 ILCS 5/510(c) (West 2000).  Therefore, the parties would be required to draft "a written agreement set forth in the judgment or otherwise approved by the court" if they wish to devise a prospective maintenance schedule regarding the benefits.  See 750 ILCS 5/510(c) (West 2000).  Such an agreement should also consider the tax implications raised by an award of maintenance.  See 750 ILCS 5/504(a)(9) (West 2000).

We further note that, if the parties cannot reach agreement on remand, the trial court may consider the parties' accrued but unpaid social security benefits when redistributing all of the marital assets equitably.  See generally 
In re Marriage of Crook
, 334 Ill. App. 3d 377, 384-85 (2002), citing 
In re Marriage of Boyer
, 538 N.W.2d 293, 296 (Iowa 1995).

For the preceding reasons, the portion of the judgment dividing the parties' marital property is reversed and the cause is remanded with directions.

Reversed and remanded with directions.

HUTCHINSON, P.J., and KAPALA, J., concur.