2024 IL App (3d) 220125

Opinion filed March 7, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| ELSA TRONSRUE, n/k/a Elsa Toledo, | ) | Du Page County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-22-0125 |
| and | ) | Circuit No. 90-D-1150 |
| | ) | |
| GEORGE TRONSRUE, | ) | |
| | ) | The Honorable |
| Respondent-Appellant. | ) | Alexander F. McGimpsey III, |
| | ) | Judge, presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice Albrecht dissented, with opinion.

**OPINION**

¶ 1    In 1990, the petitioner, Elsa Tronsrue, filed for a dissolution of her marriage to the respondent, George Tronsrue. The dissolution was finalized in 1992, and the order included an agreement by the parties that Elsa would receive monthly payments equal to a percentage of George's Army disability retirement pay and Veterans Administration disability benefits. Twenty-seven years later, in 2019, George petitioned the circuit court to terminate the monthly payments, alleging that the order was void because the court lacked jurisdiction in 1992 to divide his federal

benefits. The court granted Elsa's motion to dismiss George's petition. On appeal, George argues that the court erred when it granted Elsa's motion to dismiss. We affirm.

¶ 2                                            I. BACKGROUND

¶ 3        Elsa and George married in 1978. Elsa filed for divorce in 1990. The circuit court's judgment for dissolution of marriage was entered in July 1992 and incorporated the parties' marital settlement agreement, which, among other things, addressed George's Army disability retirement pay and his Veterans Administration (VA) disability benefits, both of which he began to draw during the parties' marriage. In part, that section of the agreement stated:

> "The Parties agree that based upon the Court's ruling that 37.2% of Husband's Army Disability Retirement pay and V.A. disability pension is marital that Wife shall receive an amount equal to 18.6% of Husband's Army Disability Retirement pay and 18.6% of Husband's V.A. disability pension payable to Wife pursuant to the applicable sections of the Uniformed Services Former Spouses Protection Act. If for any reason the United States Army and the V.A. will not withhold the appropriate amounts and send them directly to Wife then Husband shall pay directly to Wife 18.6% of his Army Disability Retirement pay and 18.6% of his V.A. Disability Pension each and every month upon entry of Judgment For Dissolution for as long as he receives said pay."

George did not timely appeal any issue regarding the order of dissolution.

¶ 4        In 2019, George filed a petition to modify or terminate the monthly payments. In part, the petition alleged that George suffered a line of duty accident in 1983 and that the Army's medical review board determined him to be unfit for active duty. He was placed on temporary disability retirement until 1985, when the medical review board found he was 60% disabled and therefore ordered his permanent disability retirement. He noted that since 1984, he had also been receiving

VA disability benefits after being "awarded a 40% VA Disability rating." Then, citing two federal cases and one Illinois appellate court case from the Second District, George's petition alleged that the circuit court "did not have jurisdiction to order the division" of his federal benefits.

¶ 5    In response, Elsa filed a motion to dismiss, alleging in part that George's petition was an untimely collateral attack on the 1992 judgment. She also filed a petition for adjudication of indirect civil contempt, in which she alleged that George never adjusted his monthly payments to her despite his Army disability retirement pay and Veterans disability benefits increasing over time.

¶ 6    The circuit court held a hearing on Elsa's motion to dismiss on January 6, 2020. During argument, counsel for George asserted that the court had jurisdiction to modify the 1992 order under section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(b) (West 2018)). In part, counsel for George stated:

> "510(b) says that the provisions as to property distribution may not be revoked or modified unless the Court finds the existence of conditions that justify the reopening of a judgment under the laws of this state. And our position is, is that, inasmuch as our allegations are that there is a lack of subject matter jurisdiction, that this Court doesn't have to reopen the judgment, this Court can just find and modify or terminate the judgment with respect to those things over which the Court, at the entry of judgment for dissolution of marriage, would do sometime ago, never had the jurisdiction to do anyway."

The court and attorneys then began to discuss whether the provision regarding George's disability retirement pay in the 1992 order was via agreement of the parties or via a specific ruling of the court that divided military benefits. However, nothing was resolved on the record because the court and the attorneys continued the discussion in chambers, off the record.

3

¶ 7 The circuit court issued its written order the same day as the hearing. In relevant part, the order stated "[t]hat for the reasons stated by the Court, the Petitioner's Motion to Strike and Dismiss Respondent's Amended Petition to Modify or Terminate Payments Made Pursuant to Judgment for Dissolution of Marriage Entered On July 6, 1992, is granted." Thus, the record does not indicate why the circuit court granted Elsa's motion to dismiss George's petition.

¶ 8 George filed an appeal from the circuit court's dismissal order. Subsequently, the circuit court held a hearing on Elsa's petition for adjudication of indirect civil contempt, which resulted in the court entering a contempt order against George. George filed a separate appeal from that order in appeal No. 3-22-0294.

¶ 9                                    II. ANALYSIS

¶ 10 Taken directly from George's brief, the sole question presented for review in this case is:

"Whether the circuit court erred when it enforced a portion of the Tronsrue marital settlement agreement which purported to divide George's Army and VA disability benefits *where the court lacked subject matter jurisdiction to do so at the time of the parties' divorce, rendering that portion of the agreement void*." (Emphasis added.)

George then phrases his sole argument as follows: "The portion of the Tronsrue marital settlement agreement purporting to divide George's federal military disability benefits is void and unenforceable." His entire argument is based on attacking the circuit court's subject-matter jurisdiction *in 1992*.

¶ 11 This appeal involves the circuit court's grant of Elsa's motion to dismiss. We review a circuit court's decision to dismiss a case *de novo*. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7.

¶ 12 It is critical in this case to understand the following regarding how a party can challenge dissolution orders of the circuit court:

4

"Although a court clearly retains jurisdiction to *enforce* its judgments indefinitely (*Waggoner v. Waggoner* (1979), 78 Ill. 2d 50, 53), it loses jurisdiction *over a matter* once 30 days have passed after the entry of a final and appealable order. (*Northern Illinois Gas Co. v. Midwest Mole, Inc.* (1990), 199 Ill. App. 3d 109, 115.) Provisions in a judgment of dissolution relating to maintenance, support and property disposition may be modified in some circumstances, however, pursuant to section 510 of the Act." (Emphases added.) *In re Marriage of Hubbard*, 215 Ill. App. 3d 113, 116 (1991).

¶ 13 The painfully obvious reason why George has phrased his argument in terms of subject-matter jurisdiction is that an order that is beyond the timeline of a direct appeal or a section 2-1401 petition (see 735 ILCS 5/2-1401 (West 2018)) cannot be assailed *unless it is void*. There is no ambiguity in Illinois regarding the ways in which a court order is void. "Judgments entered in a civil proceeding may be collaterally attacked as void only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties." *Johnston v. City of Bloomington*, 77 Ill. 2d 108, 112 (1979). While our supreme court has recognized that a voidness challenge can also be "based on a facially unconstitutional statute that is void *ab initio*" (*People v. Thompson*, 2015 IL 118151, ¶ 32), that exception is not relevant in this case. Further, George obviously cannot attack the 1992 order on the basis of personal jurisdiction because the parties were properly before the court. Thus, he is limited to arguing that the 1992 order is void due to a lack of subject-matter jurisdiction.

¶ 14 Jurisdiction forms the entire basis of this appeal, not only in the principles guiding appellate review of the circuit court's order, but also in the specific argument posited by George. Whether an order is void is entirely a question of jurisdiction. *Johnston*, 77 Ill. 2d at 112.

¶ 15    George's specific subject-matter jurisdiction argument reflects a fundamental misunderstanding of the concept. "Simply stated, 'subject matter jurisdiction' refers to the power of a court to hear and determine cases of the *general class* to which the proceeding in question belongs." (Emphasis added.) *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). With one exception[1] that is not relevant in this case, subject-matter jurisdiction originates from section 9 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 9), which grants circuit courts subject-matter jurisdiction over "justiciable matters." *In re M.W.*, 232 Ill. 2d 408, 424 (2009). "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335.

¶ 16    It is beyond dispute that dissolution of marriage actions present justiciable matters. See *id.*; see also, *e.g.*, *In re Marriage of Panozzo*, 93 Ill. App. 3d 1085, 1088 (1981) (holding that "[t]he issue of dissolution of marriage is justiciable so that the circuit court had jurisdiction over the subject matter of the judgment"). In this case, Elsa filed a petition for dissolution of marriage with the circuit court in 1990. Therefore, the circuit court had subject-matter jurisdiction in the case. See *Belleville Toyota*, 199 Ill. 2d at 335. Accordingly, it is indisputable that the 1992 order is not void. *Johnston*, 77 Ill. 2d at 112; see also *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 531 (2001) (holding that when a circuit court has personal and subject-matter jurisdiction in a case, the resulting judgment cannot be void, even if the court failed to strictly follow statutory requirements).

---

[1]The exception not relevant here is the circuit court's power to review the actions of administrative agencies, which derives from statute rather than the constitution. *In re M.W.*, 232 Ill. 2d 408, 424 (2009).

¶ 17    In sum, we emphasize the following points. First, the circuit court had both personal and subject-matter jurisdiction in 1990-92 to enter the order it did, and the order, therefore, is not void. Second, the 1992 order was final and appealable, but George did not appeal it. Accordingly, at the end of 30 days, the circuit court lost jurisdiction to ever revisit the *merits* of the order, and George lost all rights to challenge its *merits*. Third, the circuit court did retain, and therefore had, jurisdiction in 2020-22 to modify/enforce the orders it had entered, including the 1992 order, if modification was warranted. Fourth, to obtain modification at this late stage, George had to show that the 1992 order could be modified pursuant to section 510 of the Act or that it was void. He did not do so. Thus, clearly *under state law*, the 1992 judgment cannot be reopened. The circuit court therefore *had* to enforce its 1992 order in its 2022 ruling, *even if* the 1992 order were somehow erroneous. See, *e.g.*, *In re Marriage of Betts*, 200 Ill. App. 3d 26, 62 (1990) (holding that "even an erroneous court order must be obeyed until it is reversed or vacated"); *Welch v. City of Evanston*, 181 Ill. App. 3d 49, 54 (1989) (acknowledging that even if a court order is erroneous, the parties are legally obligated to follow it unless the order itself is reversed and noting that "[f]or this court to rule otherwise would completely undermine the judicial system"); *Foster v. Foster*, 983 N.W.2d 373, 382-84 (Mich. 2022) (holding that because a judgment is void only if it is entered without personal or subject-matter jurisdiction, even if a trial court's dissolution order conflicts with federal law, that fact by itself would not render the order void).

¶ 18    Moreover, to the extent that George actually argues that the 1992 order was void because it was entered without statutory authority, we hold that his argument is legally incorrect. Prior to 1964, the legislature possessed the power to statutorily define the circuit court's jurisdiction. See *M.W.*, 232 Ill. 2d at 425. However, with the 1964 amendments to the judicial article of the 1870 constitution, that power was limited to administrative review cases. *Id.* The abandonment of the

7

"inherent power" basis for jurisdiction was best described by our supreme court in *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶¶ 27-32:

"As this court has held, whether a judgment is void or voidable presents a question of jurisdiction. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998). 'If jurisdiction is lacking, any subsequent judgment of the court is rendered void and may be attacked collaterally.' *Id.* A voidable judgment, on the other hand, is an erroneous judgment entered by a court that possesses jurisdiction. *Id.*

In holding that the circuit court's January 15, 2009, judgment would be void if LVNV lacked a debt collection license, the appellate court in this case appeared to rely on the definition of jurisdiction as the ' "inherent power" ' to enter the judgment involved. 2011 IL App (1st) 092773, ¶ 13 (quoting [*Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379-80 (2005)]). Applying that definition here, the appellate court reasoned that, if a debt collection agency does not have the appropriate license, then the circuit court lacks the inherent power or 'authority' to entertain a debt collection lawsuit by that agency. *Id.* ¶ 19. Any judgment entered by the circuit court in the lawsuit would therefore be void for lack of jurisdiction and could be attacked in a collateral proceeding on that basis.

The problem with this reasoning is that the concept of 'inherent power' relied upon by the appellate court was rejected by this court in *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514 (2001). A lack of 'inherent power' refers to the idea that if a certain statutory requirement or prerequisite—such as obtaining a debt collection license—is not satisfied, then the circuit court loses 'power' or jurisdiction to consider the cause of action at issue. In other words, the circuit court's jurisdiction depends on whether the court properly follows certain statutory requirements. *Steinbrecher* concluded that this idea of jurisdiction

8

is at odds with the grant of jurisdiction given to the circuit courts under our state constitution.

*Steinbrecher* noted that a 1964 constitutional amendment significantly altered the basis of circuit court jurisdiction, granting circuit courts 'original jurisdiction of all justiciable matters, and such powers of review of administrative action as may be provided by law.' Ill. Const. 1870, art. VI (amended 1964), § 9. The current Illinois Constitution, adopted in 1970, retained this amendment and provides that 'Circuit Courts shall have original jurisdiction of all justiciable matters' and that 'Circuit Courts shall have such power to review administrative action as provided by law.' Ill. Const. 1970, art. VI, § 9. *Steinbrecher* reasoned that, because circuit court jurisdiction is granted by the constitution, it cannot be the case that the failure to satisfy a certain statutory requirement or prerequisite can deprive the circuit court of its 'power' or jurisdiction to hear a cause of action. *Steinbrecher*, 197 Ill. 2d at 529-32.

In so holding, *Steinbrecher* emphasized the difference between an administrative agency and a circuit court. An administrative agency, *Steinbrecher* observed, is a purely statutory creature and is powerless to act unless statutory authority exists. *Id.* at 530 (citing *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112 (1976)). A circuit court, on the other hand, 'is a court of general jurisdiction, which need not look to the statute for its jurisdictional authority.' *Id.* Thus, *Steinbrecher* concluded that the ' "inherent power" requirement applies to courts of limited jurisdiction and administrative agencies' but *not* to circuit courts. *Id.*

As *Steinbrecher* makes clear, following the 1964 constitutional amendment and the adoption of the 1970 Constitution, *whether a judgment is void in a civil lawsuit that does*

9

*not involve an administrative tribunal or administrative review depends solely on whether the circuit court which entered the challenged judgment possessed jurisdiction over the parties and the subject matter.* 'Inherent power' as a separate or third type of jurisdiction applies only to courts of limited jurisdiction or in administrative matters. It has no place in civil actions in the circuit courts, since these courts are granted general jurisdictional authority by the constitution." (Emphasis added and in original.)

¶ 19    Any attempt by George to claim that the circuit court lacked the authority to incorporate the parties' agreement on his disability retirement pay into the 1992 dissolution order is nothing more than an attempt to resurrect the long-abandoned "inherent power" theory of jurisdiction. Thus, to the extent he tries to make such a claim, we reject it.

¶ 20    Because the circuit court in this case had both personal and subject-matter jurisdiction in the dissolution proceeding and because there is no facially unconstitutional statute at issue here, George's voidness challenge fails and cannot serve as a basis for reversing the circuit court's judgment. See, *e.g.*, *In re Marriage of Herrera*, 2021 IL App (1st) 200850, ¶ 37 (holding that "[o]nce a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law"). Accordingly, we hold that the circuit court did not err when it granted Elsa's motion to dismiss.

¶ 21                              III. CONCLUSION

¶ 22    The judgment of the circuit court of Du Page County is affirmed.

¶ 23    Affirmed.

¶ 24    JUSTICE ALBRECHT, dissenting:

¶ 25    I respectfully dissent from the majority's ruling. The issue here is not whether the court had subject matter jurisdiction over the dissolution case in order to enter the judgment, but whether

10

the court now has the power to enforce a marriage settlement agreement that contains a provision prohibited under federal law. I would hold that it does not have such authority and would therefore reverse the court's ruling.

¶ 26 It is well established that, under the supremacy clause, federal law preempts conflicting state law, nullifying it to the extent that it actually conflicts with the federal law. U.S. Const., art. VI; *In re Marriage of Hulstrom*, 342 Ill. App. 3d 262, 266 (2003). It is also settled that military disability benefits may not be considered marital assets by the court in a dissolution proceeding. *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 159 (2005). Therefore, the start of our inquiry should begin with whether the supremacy clause of the United States Constitution preempts a division of George's military disability benefits by way of a marital settlement agreement. Section 5301(a)(1) of the Veterans Benefits Act of 2003 (Veterans Benefits Act) provides that:

> "Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a)(1) (2018).

¶ 27 Section 5301(a)(3)(A) later added the clarification that "in any case where a beneficiary entitled to compensation *** enters into an agreement with another person under which agreement such other person acquires for consideration the right to receive such benefit *** such agreement shall be deemed to be an assignment and is prohibited." *Id.* § 5301(a)(3)(A). Additionally, while the parties' marital settlement agreement refers to the applicability of the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1401 *et seq.* (1988)), the act applies to the

11

classification of retirement payments as marital property, not the disability payments at issue here. See, *e.g.*, *Clauson v. Clauson*, 831 P.2d 1257, 1264 (Alaska 1992) (holding disability benefits should not be treated as marital property subject to division upon dissolution); *In re Marriage of Franz*, 831 P.2d 917, 918 (Colo. App. 1992) (a veteran's disability retirement pay is precluded from being divided as marital property). Thus, Congress clearly contemplated the circumstance where a beneficiary may enter into an agreement that would require payment of his military disability benefit and chose to prohibit the act. Such is the case here, where George agreed to pay Elsa a portion of his disability benefits.

¶ 28 Illinois courts have already analyzed the supremacy clause as it pertains to enforcing a marital settlement agreement that divides a spouse's social security benefits in contradiction to federal law. See *Hulstrom*, 342 Ill. App. 3d at 266. Section 407(a) of the Social Security Act, as amended (42 U.S.C. § 407(a) (2000)), like the Veterans Benefits Act, contains an anti-assignment provision that conflicted with a provision of the parties' settlement agreement in their dissolution proceeding. See *Hulstrom*, 342 Ill. App. 3d at 266. In determining whether the trial court had jurisdiction to enforce the settlement agreement, the court in *Hulstrom* found the principles of the Restatement (Second) of Judgments § 12 (1982) instructive. *Hulstrom*, 342 Ill. App. 3d at 271. The Restatement provided that

> " '[w]hen a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if: *** (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government[.]' " (Emphasis omitted.) *Id.* (quoting Restatement (Second) of Judgments § 12 (1982)).

The court followed this proposition to conclude that the provision in the settlement agreement that divided the social security benefits substantially infringed on federal law; thus, the trial court did not have jurisdiction to enforce that provision of the agreement. *Id.* at 272.

¶ 29 Several courts have addressed similar situations relating to the Veterans Benefits Act and other statutes with identical provisions. See, *e.g.*, *Wissner v. Wissner*, 338 U.S. 655, 660-61 (1950) (the National Service Life Insurance Act of 1940 (currently codified at 38 U.S.C. § 1901 *et seq.* (2018)) precluded state law requiring division under community property laws); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 584-87 (1979) (non-assignability of retirement benefits under Railroad Retirement Act of 1974 (Railroad Retirement Act) (45 U.S.C. § 231 *et seq.* (1976)) precludes community property interest in spouse); *Ex parte Johnson*, 591 S.W.2d 453, 456 (Tex. 1979) (disability benefits from the Veterans Administration may not be considered in spousal awards); *Boulter v. Boulter*, 930 P.2d 112, 114 (Nev. 1997) (*per curiam*) (property settlement agreement created an invalid contract transferring retirement benefits to spouse when the federal Social Security Act provision barred such transfer, and the court's divorce decree created state action preempted by federal law). Illinois courts have also provided authority to aid in our analysis. See *Hulstrom*, 342 Ill. App. 3d at 272; *Wojcik*, 362 Ill. App. 3d at 159. I find these authorities persuasive.

¶ 30 Moreover, the court in *Wojcik*, 362 Ill. App. 3d 144, furthered the decision made by the United States Supreme Court regarding the division of benefits under the Veterans Benefits Act through a dissolution proceeding in the case of *Mansell v. Mansell*, 490 U.S. 581 (1989). In *Mansell*, the Court implicitly found that state courts did not have the power to divide military disability benefits upon dissolution of marriage due to federal preemption. *Id.* at 594-95. This principle was followed in *Wojcik*, where the court held that the supremacy clause precluded Illinois

13

courts from dividing Veteran's Administration disability benefits through dissolution proceedings. *Wojcik*, 362 Ill. App. 3d at 159. The court further held that section 5301(a)(1) of the Veterans Benefits Act is indistinguishable from the anti-assignment provisions in the Railroad Retirement Act and the Social Security Act, and because the Supreme Court already determined these statutes preempted state law, the Veterans Benefits Act must also. *Id.*

¶ 31 Applying the precedent outlined above, I would decide that the Veterans Benefits Act precludes state courts from treating military disability benefits as assignable property. See *id.* Moreover, state courts are without power to enforce a private agreement, such as a marriage settlement agreement, from dividing such payments when that agreement violates the prohibition against transfer or assignment of benefits. See 38 U.S.C. § 5301(a)(3)(A) (2018); *Hulstrom*, 342 Ill. App. 3d at 266. As in *Hulstrom*, I would find that the court's enforcement of the provision that requires George to divide his military disability benefits with Elsa " 'substantially infringe[d] the authority of another tribunal or agency of government,' " namely, the federal government. (Emphasis omitted.) 342 Ill. App. 3d at 271 (quoting Restatement (Second) of Judgments § 12 (1982)). The fact that the parties agreed to the contents of the agreement is immaterial; it is the court's actions in enforcing the provision after George filed his petition that is relevant here. See *id.* at 266; *Boulter*, 930 P.2d at 114.

¶ 32 While the circuit court generally had jurisdiction over the parties and the dissolution proceedings, it lacked the authority to incorporate a provision of the settlement agreement into the judgment that is contrary to federal law. Therefore, I would hold that the circuit court erred by enforcing a marital settlement agreement that required George to assign his military disability benefits to Elsa when such an agreement violates section 5301 of the Veterans Benefits Act (38 U.S.C. § 5301(a)(1) (2018)).

14

*In re Marriage of Tronsrue*, 2024 IL App (3d) 220125

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 90-D-1150; the Hon. Alexander F. McGimpsey III, Judge, presiding. |
| **Attorneys for Appellant:** | Michael G. DiDomenico and Sean M. Hamann, of Lake Toback DiDomenico, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert D. Boyd, of The Stogsdill Law Firm, P.C., of Wheaton, for appellee. |